

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| DOUGLAS COUNTY, | ) | 3:09-CV-00544-RCJ-(RAM) |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, EMERGENCY MANAGEMENT AGENCY, et al., | ) ) ) | |
| Defendants. | ) | |

This is an action for review of an administrative agency determination. Plaintiff Douglas County ("Plaintiff") sued Defendants U.S. Department of Homeland Security's Federal Emergency Management Agency ("FEMA"), William Craig Fugate, and William R. Blanton Jr. (collectively, "Defendants") for failure to follow administrative procedure and for issuing flood maps that allegedly contain technical errors. Presently before the Court is Defendants' Motion to Dismiss (#11). Plaintiff opposed the motion (#13) and Defendants replied (#18). A hearing was held on May 14, 2010. The Court now issues the following order. IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#11) IS GRANTED IN PART AND DENIED IN PART.

## I. BACKGROUND

Under the National Flood Insurance Act, FEMA is charged with creating flood insurance rate maps. *See* 42 U.S.C. §§ 4014, 4101. FEMA determines base flood elevations to create

///

1

1  these maps.  *See* 44 C.F.R. § 59.1.  William Craig Fugate is a FEMA Administrator and

2  William R. Blanton Jr. is the Chief of FEMA's Engineering Management Branch.

3       According to the complaint, FEMA began investigating flood levels in Douglas County

4  in late 2003 or early 2004.  (Compl. (#1) ¶ 4).  On April 4, 2008, FEMA issued provisional

5  flood insurance rate maps to Plaintiff.  (*Id.* at ¶ 5).  FEMA published its base flood elevation

6  determinations in the Federal Register.  It also published the determinations in the *Nevada*

7  *Appeal*, a newspaper published in Carson City, on May 27 and June 3, 2008.  (Mot. to Dismiss

8  (#11) Ex. 3).  After the second publication, Plaintiff had 90 days to appeal to FEMA.  The last

9  day Plaintiff could appeal was either September 1 or September 2, if the Labor Day holiday

10 is accounted for.  However, when Plaintiff asked Eric Simmons, a senior FEMA engineer,

11 when their 90 day period for appeal expired, he informed Plaintiff that the last day it could

12 appeal was September 3.  (Muscarella Decl. (#16) ¶ 2).

13      Plaintiff expended approximately $30,000 to obtain software to review FEMA's models

14 and tens of thousands of dollars hiring consultants to review FEMA's determinations.  (Compl.

15 (#1) ¶¶ 6, 12).  Plaintiff sent an appeal to FEMA on September 3, 2008.  (*Id.* at ¶ 7).

16 Subsequent to the appeal, Plaintiff met with FEMA staff in January 2009 to discuss the appeal.

17 The FEMA staff declined to adopt Plaintiff's suggested corrections.  (*Id.* at ¶ 8).  On April 2,

18 2009, FEMA sent Plaintiff a letter informing Plaintiff that FEMA believed its original maps were

19 the most accurate and responding to Plaintiff's criticisms.  The letter informed Plaintiff that it

20 had 60 days to respond.  (*Id.* at ¶ 9).

21      In May 2009, Plaintiff responded to FEMA, again challenging its proposed maps.

22 Plaintiff also contacted FEMA via e-mail and telephone and eventually agreed to meet with

23 FEMA on August 4, 2009, to resolve the issues with the maps.  (*Id.* at ¶ 10).  However, on July

24 23, 2009, FEMA issued its final determination letter regarding the flood insurance rate maps.

25 The letter informed Plaintiff that its only remaining process for contesting the maps was timely

26 judicial review.  (*Id.* at ¶ 11).

27      Despite FEMA's final determination letter, the parties attended the August 4th meeting.

28 According to Plaintiff, FEMA staff agreed that FEMA's maps had deficiencies and that FEMA

2

had not properly coordinated with Plaintiff.  Plaintiff requested that FEMA rescind its final
determination, but it has not responded to that request.  (*Id.* at ¶ 12).  On September 17, 2009,
Plaintiff sued Defendants for failure to follow administrative procedure and for issuing flood
maps that contain technical errors.  (Compl. (#1)).

II. LEGAL STANDARD

### A.   Rule 12(b)(1)

The party invoking the court's jurisdiction, rather than the party moving to dismiss,
bears the burden of establishing personal jurisdiction. *Rio Props., Inc. v. Rio Int'l Interlink*, 284
F.3d 1007, 1019 (9th Cir. 2002).  The plaintiff's burden of proof depends on the nature of the
evidence before the court.  If the parties only submit written evidence, "the plaintiff need only
make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss." *Id.*;
*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  The plaintiff
need only produce written materials that "demonstrate facts which support a finding of
jurisdiction in order to avoid a motion to dismiss." *Id.*  The defendant cannot prevail merely
by "controverting the facts established by a plaintiff through his own affidavits and supporting
materials." *Id.*  At this stage, the district court must accept uncontroverted allegations in the
plaintiff's complaint as true and resolve conflicts between the parties' evidence in the plaintiff's
favor. *Rio Props.*, 284 F.3d at 1019.  The court may not assume the truth of allegations
contradicted by affidavits. *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284
(9th Cir. 1977).  Nor may a district court make credibility determinations in the face of
conflicting affidavits unless one version of facts is inherently incredible. *Id.*  But, if the
materials before the court raise issues of credibility and disputed questions of fact regarding
jurisdiction, the district court may take evidence at a preliminary hearing. *Id.* at 1285.  Plaintiff
must then establish personal jurisdiction by a preponderance of the evidence. *Id.*

### B.   Rule 12(b)(6)

A court must dismiss a cause of action that fails to state a claim upon which relief can
be granted.  Fed. R. Civ. P 12(b)(6).  When considering a motion to dismiss under Rule
12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not

3

give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

### III. ANALYSIS

**A.     Plaintiff had 90 days after Defendants' second publication of flood projections in the *Nevada Appeal* to appeal to FEMA.**

FEMA must publish projected flood elevations "in a prominent local newspaper at least twice during the ten-day period following notification to the local government." 42 U.S.C. § 4104(b). "During the ninety-day period following the second publication, any owner or lessee of real property within the community who believes his property rights to be adversely affected by the Director's proposed determination may appeal such determination to the local government." *Id.* Plaintiff argues that the time period to appeal to FEMA never began to run because Defendants failed to follow administrative procedure by publishing the flood projections in a prominent local newspaper. Defendants published the projections in the *Nevada Appeal*.

The *Nevada Appeal* is a prominent local newspaper. Plaintiff argues that the *Nevada Appeal* is not a prominent local newspaper because it is published in Carson City County, not Douglas County. Plaintiff suggests Defendants should have published the projections in the *Record Courier* which is published in Douglas County.

This argument is unpersuasive. The requirement of publication in a prominent local newspaper is clearly meant to give effective notice to interested parties. Therefore, "local" should be interpreted to mean locally circulated, not simply locally published. Clearly, a

4

newspaper that is published in Douglass County but circulated elsewhere should not satisfy the statutory notice requirements.  But newspapers published elsewhere with wide circulation in Douglas County should satisfy the statute.  The *Nevada Appeal* has the second-largest circulation of newspapers in Northern Nevada and circulates to five neighborhoods in Douglass County five days a week. (Def.'s Reply (#18) 6:9–18).  Even if the *Nevada Appeal* was not a prominent local newspaper, Plaintiff has not show that it lacked notice of the projections or was in anyway prejudiced. (*See id.* at 7:14–8:12).  Therefore, Defendants satisfied the statute by publishing in the *Nevada Appeal.*

**B.    Despite Plaintiff's late appeal to FEMA, this Court has jurisdiction over this matter.**

Defendants argue that this Court lacks subject matter jurisdiction over this matter because Plaintiff filed an appeal to FEMA after the deadline proscribed by statute.  Plaintiff concedes that its appeal was filed with FEMA one day after the statutory deadline, but argues that equitable defenses of estoppel, tolling, and waiver prevent Defendants from asserting Plaintiff's untimeliness.  Because the time-limit that Plaintiff has not fully complied with is not jurisdictional, Plaintiff's untimeliness does not deprive this Court of subject matter jurisdiction.

The statutes governing the administrative procedure at issue in this case have two relevant time limits for appeals.  The first imposes a 90-day time limit on appeals to FEMA after the second publication of its projected flood elevations for comment in a prominent local newspaper. 42 U.S.C. § 4104(b), (c).  This statute governs administrative process for FEMA to seek and incorporate comments from the community.  After FEMA receives a timely appeal, it reviews and resolves the appeals with the appellants and makes a final determination within a reasonable time. *Id.* at § 4104(e).  FEMA may decline to consider untimely appeals. *See City of Brunswick v. Untied States*, 849 F.2d 501, 504–06 (11th Cir. 1988).

The second time limit for appeals applies to appeals to the district court after FEMA's final determination.  "Any appellant aggrieved by any final determination of the Director upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than

1  sixty days after receipt of notice of such determination." *Id.* at § 4104(g).  On review, the

2  district court "shall decide all relevant questions of law, interpret constitutional and statutory

3  provisions, and determine the meaning or applicability of the terms of an agency action."  5

4  U.S.C. § 706; 42 U.S.C. § 4104(g) ("The scope of review by the court shall be as provided by

5  chapter 7 of Title 5.").  FEMA's decision to not consider an appeal it deems untimely may be

6  reviewed by a district court.

7       Defendant only attacks the timeliness of Plaintiff's appeal to FEMA, not to this Court.

8  Time limits in federal statutes are generally not jurisdictional with regard to private litigants.

9  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely

10  charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal

11  court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and

12  equitable tolling."); *Naton v. Bank of California*, 649 F.2d 691, 695–96 (9th Cir. 1981) (holding

13  that equitable tolling and equitable estoppel apply to the 300-day notification time limit in the

14  Age Discrimination and Employment Act).  Though waivers of sovereign immunity are

15  construed strictly and procedural time limits are conditions of the waiver of sovereign

16  immunity, absent evidence of Congressional intent to the contrary, it is presumed that

17  Congress intends that time limits in remedial statutes are not jurisdictional even when the

18  defendant is the United States.  *See Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96

19  (1990) (6-2 decision on this issue) (holding that equitable tolling applies to the 30-day time

20  limit in Title VII suit against United States agency); *see also John R. Sand & Gravel Co. v.

21  United States*, 552 U.S. 130, 137–38 (2008) (7-2) (holding *Irwin* applies prospectively to

22  statutory interpretation but does not alter prior case law holding that specific federal statutes

23  of limitations were jurisdictional and could not be altered by equitable defenses).

24       Neither party has alerted the Court to any prior case law addressing whether the 90-

25  day time limit for appeal to FEMA is jurisdictional.  Though Defendants cite several cases

26  discussing jurisdiction under 42 U.S.C. § 4104, none of the cases are on point regarding this

27  issue. *See City of Brunswick v. Untied States*, 849 F.2d 501, 504–06 (11th Cir. 1988) (holding

28  that FEMA was substantially justified in denying second appeal to FEMA by city lodged well

6

after the 30 days FEMA gave the city to respond and well-beyond 60 days from FEMA's final determination); *County of Monmouth v. F.E.M.A.*, No. 09-769, 2009 WL 3151331, at *3–5 (D.N.J. Sept. 24, 2009) (holding that the court lacked jurisdiction because the county was not a "community" and thus lacked standing to appeal); *City of Biloxi v. Giuffrida*, 608 F. Supp. 927, 930–31 (S.D. Miss. 1985) (holding that the court lacked jurisdiction because the city's appeal was not based on scientific or technical error and because appeal was made to the court more than 60 days after notice of FEMA's final decision); *Reardon v. Krimm*, 541 F. Supp. 187, 188–89 (D. Kan. 1982) (holding the court lacked jurisdiction because the appeal was not based on scientific or technical error); *City of Trenton v. F.E.M.A.*, 545 F. Supp 13, 15–16 (E.D. Mich. 1981) (holding that the court lacked jurisdiction because the city's appeal was made to the court more than 60 days after notice of FEMA's final decision). None of these cases address whether a district court is deprived of jurisdiction when the appellant appeals to the court within 60 days of FEMA's final determination but had made appeal to FEMA more than 90 days after the second publication in a local newspaper.

"The ninety-day appeal period was not chosen randomly, but determined by Congress to be capable of 'carefully protecting the interests of those affected [while] avoid[ing] the pitfall of permitting those unnecessary delays and self interested procrastinations which would make the flood insurance program unworkable.'" *City of Biloxi*, 608 F. Supp. at 929 (quoting Cong. Rec. 11-42885, December 20, 1973). This purpose suggests a concern with avoiding unreasonable and bad-faith delays. The statutory framework clearly evinces an attempt to encourage FEMA to work with local communities in good faith. Such cooperation is not aided by rigid adherence to time limits. Indeed, it appears that FEMA routinely grants communities more than 90 days to appeal. *City of Biloxi*, 608 F. Supp. at 930 ("It is also noted that although Congress has limited the appeal period to ninety days, FEMA will accept an appeal of its flood elevations at any time, even beyond the ninety-day period."). There is no indication that Congress intended this administrative procedure to affect the jurisdiction of a district court on later appeal. The statute granting appellate jurisdiction to the district courts nowhere states that the district court's jurisdiction is dependent on the timely filing of an appeal with FEMA.

7

*See* 42 U.S.C. § 4104(g). Failure to timely file an appeal with FEMA is a ground for FEMA to deny the appeal. *See City of Brunswick*, 849 F.2d at 504–06. A district court may review FEMA's compliance with administrative procedure. *See Columbia Venture LLC v. South Carolina Wildlife Federation*, 562 F.3d 290, 294–95 (4th Cir. 2009) (per curiam) (holding that FEMA's failure to timely publish in the Federal Register was harmless error).

Nothing suggests a district court is precluded from reviewing FEMA's decision to deem an appeal as untimely. Certainly, if FEMA arbitrarily deemed a clearly timely appeal as untimely and refused to consider it, and the appeal was otherwise proper, a district court could review the agency's decision. Absent evidence suggesting otherwise and absent prior case law to the contrary, the Court presumes that time limits in remedial statutes are not jurisdictional, even if asserted against the government. *See John R. Sand & Gravel*, 552 U.S. at 137–38; *Irwin*, 498 U.S. at 95–96. Therefore, Plaintiff's failure to appeal to FEMA within 90 days of the second publication in a local newspaper does not deprive this Court of subject matter jurisdiction.

**C.      Plaintiff's equitable defenses may allow it proceed with its appeal despite untimeliness.**

Because the statute is not jurisdictional, Plaintiff may assert equitable defenses to prevent Defendants from arguing its untimeliness. *See Irwin*, 498 U.S. at 95–96.

**1.      Equitable Estoppel may prevent Defendants from arguing that Plaintiff's appeal was untimely.**

"The doctrine of equitable estoppel is available if the following elements are present: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Lavin v. Marsh*, 644 F.2d 1378, 1382 (9th Cir. 1981) (quoting *United States v. Georgia-Pacific*, 421 F.2d 92, 96 (9th Cir. 1970)). "[T]o invoke estoppel against the Government, the party claiming estoppel must show 'affirmative misconduct' as opposed to mere failure to inform or assist." *Lavin*, 644 F.2d at 1382. "A party seeking to raise estoppel

against the government must establish 'affirmative misconduct going beyond mere negligence'; even then, 'estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability.'" *Wagner v. Director, F.E.M.A.*, 847 F.2d 515, 519 (9th Cir. 1988). Affirmative misconduct includes deliberate lies and a pattern of false promises. *See Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc).

In *Lavin*, the plaintiff argued that the Army Reserve should be estopped from removing him at age 53 under a mandatory removal statute because its recruiters had led him to believe that he would be able to keep serving until he qualified for retirement during the 17 years he served. The court held that the Army Reserve was not estopped from relying on the statute because plaintiff never asked for retirement eligibility requirements in writing and never—despite being licensed to practice law—checked the relevant statutes and regulations himself and because plaintiff could have served long enough to earn retirement benefits if he obtained a higher rank. *Id.* at 1383–84. The court noted that "[p]ersons dealing with the government are charged with knowing government statutes and regulations, and they assume the risk that government agents may exceed their authority and provide misinformation." *Id.* at 1383.

Defendants argue that estoppel can never apply to the United States. Defendants cite *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 420 (1990), for this proposition. (Def.'s Reply (#18) 8:18–20). In *Richmond*, the Supreme Court relied on the Appropriations Clause and clearly limited its holding to claims "for payment of money from the Public Treasury contrary to a statutory appropriation." 496 U.S. at 424. The Supreme Court explicitly did not hold that an estoppel claim could never succeed against the United States. *Id.* at 423; *see also Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998) ("When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution.").

Plaintiff may succeed with an estoppel claim. Plaintiff asserts that an agent of Defendants informed it that it had until September 3 to file its appeal. Rather than deny

9

1   Plaintiff's September 3 appeal as untimely, Defendants considered it before making their final

2   determination. Defendants treated Plaintiff's appeal as timely in numerous interactions with

3   Plaintiff. Plaintiff's incurred costs attempting to change Defendants' minds on the flood

4   projections operating under the assumption that their appeal was timely. Plaintiff may be able

5   to show a pattern of misrepresentation that warrants estoppel.

6           **2.     Equitable tolling may excuse Plaintiff's failure to timely appeal to**

7                   **FEMA.**

8           Equitable tolling excuses a claimant's failure to comply with time limits if the claimant

9   lacks actual and constructive notice of the limits. *Leong v. Potter*, 347 F.3d 1117, 1123 (9th

10  Cir. 2003). "Equitable tolling focuses on a plaintiff's excusable ignorance and lack of prejudice

11  to the defendant." *Id.* Once a claimant obtains counsel, tolling ceases because she is

12  charged with constructive knowledge of filing limitations through her attorney. *Id.* "Among the

13  circumstances to which courts may look in determining the applicability of equitable tolling is

14  'whether the complainant has been induced or tricked by his adversary's misconduct into

15  allowing the filing deadline to pass.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204,

16  1207 (9th Cir. 1995) (quoting *Irwin*, 498 U.S. at 96).

17          "Because the applicability of the equitable tolling doctrine often depends on matters

18  outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'"

19  *Supermail*, 68 F.3d at 1206 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th

20  Cir. 1993)). "A motion to dismiss based on the running of the statute of limitations period may

21  be granted only 'if the assertions of the complaint, read with the required liberality, would not

22  permit the plaintiff to prove that the statute was tolled.'" *Supermail*, 68 F.3d at 1206–07

23  (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)).

24          In *Supermail*, according to the complaint, the IRS placed levies on refunds owed to

25  plaintiff by the U.S. Customs Service to satisfy a plaintiff's attorney's tax obligation. 68 F.3d

26  at 1205–06. The IRS did not inform the plaintiff of the levies. *Id.* at 1206. Instead, over a two

27  years after the levies were effected, the Customs Service told the plaintiff that the refunds

28  were delayed but would be paid eventually. *Id.* Two weeks later, the IRS finally advised the

10

1  plaintiff that it had levied the refunds. *Id.* The plaintiff promptly filed a request for return of
2  the property with the IRS in New York. *Id.* The IRS ignored the request, then asked for
3  additional information. *Id.* The plaintiff promptly complied. *Id.* The IRS then informed the
4  plaintiff that it must file with a California office. *Id.* The plaintiff promptly complied. *Id.* For
5  several months, the IRS did not act. *Id.* When the plaintiff threatened suit, the IRS asked for
6  more information. *Id.* The plaintiff promptly complied. *Id.* Finally, the California IRS officer
7  denied the plaintiff's request because it had not been timely filed. *Id.* The plaintiff then sued.
8  *Id.* The Ninth Circuit reversed the district court's dismissal and held that the plaintiff could
9  prove a set of facts that would entitle him to equitable tolling. *Id.* The Ninth Circuit reasoned
10  that the IRS's failure to notify the plaintiff of the levies and the Customs Service's
11  representations that the refund would be paid could toll the period to file with the IRS and that
12  the IRS representation that the plaintiff must file with its California office could toll the period
13  to file a civil complaint with the district court because the second request was the only request
14  the IRS treated as proper. *Id.* at 1208.

15      As noted above, equitable tolling focuses on Plaintiff's excusable neglect and the lack
16  of prejudice to Defendants. *See Leong*, 347 F.3d at 1123. Defendants have already acted
17  as if the appeal was timely. Therefore, there is little prejudice to Defendants in allowing
18  Plaintiff to proceed with its claim. Plaintiff's neglect is excusable. It reasonably relied on
19  representations from Defendants regarding its time to appeal. Defendants' representations
20  were not clearly suspect such that Plaintiff should not be allowed to rely on them. Plaintiff may
21  be able to show its justifiable reliance to justify equitable tolling.

22      **3.    Defendants may have waived their right to claim that Plaintiff's**
23          **appeal to FEMA was untimely.**

24      Plaintiff argues that Defendants waived their right to assert untimeliness because they
25  treated the appeal as timely in the administrative process before issuing their final
26  determination. Defendants do not address waiver in their reply. Since Defendants never
27  raised untimeliness to reject Plaintiff's appeal during the administrative process, they may
28  have waived the right to do so now.

**D.    Plaintiff concedes that this Court's review over Defendants' actions is limited to the scientific and technical accuracy of Defendants' flood projections.**

Defendants argue that review by this Court is limited to whether FEMA's projections are scientifically or technically accurate.   Plaintiff admits that the Court cannot review for procedural defects. (Pl.'s Opp'n (#13) 9:21–10:10:14).  Therefore, the Court must dismiss Plaintiff's claims that are not based on the scientific or technical inaccuracy in the projections.[1]

Plaintiff's first cause of action alleges that Defendants failed to comply with administrative procedure regarding communication and cooperation with Plaintiff. (Compl. (#1) ¶¶ 18–22). Plaintiff's second cause of action alleges that Defendants failed to comply with administrative procedure in responding to Plaintiff's appeal. (*Id.* at ¶ 24–26).  But, Plaintiff's third cause of action alleges that Defendants' projections are technically incorrect. (*Id.* at ¶¶ 28–30). Therefore, Plaintiff's first and second cause of action are dismissed.

**E.    Plaintiff has met its burden of establishing jurisdiction by showing that it made a proper appeal to FEMA with proper supporting data and documentation.**

Defendants also argue that Plaintiff failed to lodge a proper appeal with FEMA because its appeal challenging the scientific and technical accuracy of FEMA's projections did not

---

[1] Though Plaintiff has conceded the point, it has perhaps done so prematurely.  An appeal to FEMA after the second publication of its projections in a prominent local newspaper is limited solely to challenges that FEMA's projections "are scientifically or technically incorrect."  42 U.S.C. § 4104(b).  Furthermore, a proper appeal to a district court must be based on a proper appeal to FEMA.  Therefore, the district court can only review an appeal to FEMA that challenged the scientific or technical accuracy of its projections. *City of Biloxi v. Giuffrida*, 608 F. Supp. 927, 931 (S.D. Miss. 1985); *Reardon v. Krimm*, 541 F. Supp. 187, 188–89 (D. Kan. 1982).  But, if there is a proper appeal to FEMA, the district court's scope of review is defined in chapter seven of title five of the U.S. Code. 42 U.S.C. § 4104(g).  Section 706 states that the district court, when reviewing an agency action, "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.  The reviewing court, among other things, shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . [or] without observance of procedure required by law . . . ." *Id.* at § 706(2).  A district court may review FEMA's compliance with administrative procedure. *See Columbia Venture LLC v. South Carolina Wildlife Federation*, 562 F.3d 290, 294–95 (4th Cir. 2009) (holding that FEMA's failure to timely publish in the Federal Register was harmless error).

1  include the required supporting documentation.

2      The sole basis of an appeal to FEMA is that its proposed flood projections "are

3  scientifically or technically incorrect." 42 U.S.C. § 4104(b). "Upon appeal . . . [FEMA] shall

4  review and take fully into account any technical or scientific data submitted by the community

5  that tend to negate or contradict the information upon which [its] proposed determination is

6  based." *Id.* at § 4104(e). "Because scientific and technical correctness is often a matter of

7  degree rather than absolute (except where mathematical or measurement error or changed

8  physical conditions can be demonstrated), appellants are required to demonstrate that

9  alternative methods or applications result in more correct estimates of base flood elevations,

10  thus demonstrating that FEMA's estimates are incorrect." 44 C.F.R. § 67.6(a). Thus, appeals

11  must include certain data. *See id.* at § 67.6(b). A district court has no jurisdiction to review

12  FEMA's final determination unless appellants' appeal to FEMA was supported by scientific or

13  technical documentation. *City of Biloxi*, 608 F. Supp. at 931.

14      Plaintiff's appeal asserted scientific and technical inaccuracy based on inferior data,

15  questionable methodology, and mathematical, measurement, and technical mapping errors.

16  (Mot. to Dismiss (#11) Ex. 4 at 2). "If an appellant believes the proposed base flood

17  elevations are technically incorrect due to a mathematical or measurement error or changed

18  physical conditions, then the specific source of the error must be identified. Supporting data

19  must be furnished to FEMA including certifications by a registered professional engineer or

20  licensed land surveyor, of the new data necessary for FEMA to conduct a reanalysis." 44

21  C.F.R. § 67.6(b)(1).

22  If an appellant believes that the proposed base flood elevations are technically
   incorrect due to error in application of hydrologic, hydraulic or other methods or
23  use of inferior data in applying such methods, the appeal must demonstrate
   technical incorrectness by:
24  (i) Identifying the purported error in the application or the inferior data.
   (ii) Supporting why the application is incorrect or data is inferior.
25  (iii) Providing an application of the same basic methods utilized by FEMA but
   with the changes itemized.
26  (iv) Providing background technical support for the changes indicating why the
   appellant's application should be accepted as more correct.
27  (v) Providing certification of correctness of any alternate data utilized or
   measurements made (such as topographic information) by a registered
28  professional engineer or licensed land surveyor, and

13

(vi) Providing documentation of all locations where the appellant's base flood elevations are different from FEMA's.

*Id.* at § 67.6(b)(2).

Plaintiff submitted an engineer's report with its appeal that contains a map showing the areas where Plaintiff disagreed with Defendants' projections. (Moss Decl. (#17) ¶ 6, Ex. C). Plaintiff also submitted a study that suggested FEMA's methodology was not the most accurate and mentioned clerical errors. (*Id.* at ¶ 7, Ex. D). Plaintiff contends that other relevant evidence is contained in the administrative record, but Plaintiff has not deemed it necessary to cite to such evidenc e in its opposition. (Pl.'s Opp'n (#13) 9:18–20).

Plaintiff has the burden of establishing a prima faice showing of jurisdiction. The Court must resolve conflicts in Plaintiff's favor at this stage. Based on the evidence before the Court, it appears that Plaintiff made a proper appeal to FEMA, supported by expert reports and maps showing the areas where Plaintiff's projections differed from FEMA's. Though Plaintiff has not shown that its appeal satisfied every element of 44 C.F.R. § 67.6(b) to the letter, Defendant has only asserted that Plaintiff has failed to meet the requirements of § 67.6(b). Without the complete appeal to review, the Court can only guess as to whether or not it met the requirements of § 67.6(b). In such a situation, the Court is bound to affirm Plaintiff's assertion of jurisdiction. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

**F.      Plaintiff pled its complaint with sufficient allegations to state claims upon which relief may be granted.**

Without going into unnecessary detail, Plaintiff's complaint states a cognizable claim for relief. It is not a mere recitation of the legal elements of a cause of action. It provides sufficient notice to Defendants of the grounds of Plaintiff's claims.

///

///

///

///

14

**IV. CONCLUSION**

Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss (#11) IS GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's First and Second Causes of Action are DISMISSED.

IT IS SO ORDERED.

DATED: This 9th day of June, 2010.


Robert G. Jones
UNITED STATES DISTRICT JUDGE

15