UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DOUGLAS COUNTY,<br><br>        Plaintiff,<br><br>vs.<br><br>FEDERAL EMERGENCY MANAGEMENT AGENCY et al.,<br><br>        Defendants. | 3:09-cv-00544-RCJ-RAM<br><br>ORDER |

This case arises out of the Federal Emergency Management Agency's ("FEMA") issuance of allegedly defective flood maps. Plaintiff Douglas County has filed a Motion for Reconsideration (ECF No. 25) in response to the Court's dismissal of two causes of action. For the reasons given herein, the Court grants the motion.

I.  **FACTS AND PROCEDURAL HISTORY**

Under the National Flood Insurance Act ("NFIA"), FEMA is charged with creating flood insurance rate maps. *See* 42 U.S.C. §§ 4014, 4101. FEMA determines base flood elevations to create these maps. *See* 44 C.F.R. § 59.1. William Craig Fugate is a FEMA Administrator, and William R. Blanton Jr. is the Chief of FEMA's Engineering Management Branch.

FEMA began investigating flood levels in Douglas County in late 2003 or early 2004. (Compl. ¶ 4, Sept. 17, 2009, ECF No. 1). On April 4, 2008, FEMA issued provisional Flood

Insurance Rate Maps ("FIRM") for Douglas County. (*Id.* ¶ 5). FEMA published its base flood elevation determinations in the Federal Register. It also published the determinations in the *Nevada Appeal*, a newspaper published in Carson City, Nevada, on May 27 and June 3, 2008. (Mot. Dismiss, Ex. 3, ECF No. 11). After the second publication, Plaintiff had ninety (90) days to appeal to FEMA. The last day Plaintiff could have appealed was September 1, or September 2 if the Labor Day holiday were excluded. However, when Plaintiff asked FEMA engineer Eric Simmons when the appeal period would expire, Simmons informed Plaintiff that the last day it could appeal was September 3. (Muscarella Decl. ¶ 2, ECF No. 16).

Plaintiff expended approximately $30,000 to obtain software to review FEMA's models and tens of thousands of dollars hiring consultants to review FEMA's determinations. (Compl. ¶¶ 6, 12). Plaintiff sent an appeal to FEMA on September 3, 2008 met with FEMA staff in January 2009 to discuss it. (*Id.* ¶¶ 7–8). The FEMA staff declined to adopt Plaintiff's suggested corrections. (*Id.* ¶ 8). On April 2, 2009, FEMA sent Plaintiff a letter informing Plaintiff that FEMA believed its original maps were the most accurate and responding to Plaintiff's criticisms. The letter informed Plaintiff that it had sixty (60) days to respond. (*Id.* ¶ 9).

In May 2009, Plaintiff responded to FEMA, again challenging its proposed maps. Plaintiff also contacted FEMA via e-mail and telephone and eventually agreed to meet with FEMA on August 4, 2009 to resolve the issues with the maps. (*Id.* ¶ 10). However, on July 23, 2009, FEMA issued its final determination letter regarding the FIRM. The letter informed Plaintiff that its only remaining process for contesting the maps was timely judicial review. (*Id.* ¶ 11).

Despite FEMA's final determination letter, the parties attended the August 4, 2009 meeting. According to Plaintiff, FEMA staff agreed that FEMA's maps had deficiencies and that FEMA had not properly coordinated with Plaintiff. Plaintiff requested that FEMA rescind its final determination, but it did not respond to that request. (*Id.* ¶ 12).

On September 17, 2009, Plaintiff sued FEMA, Fugate, and Blanton for injunctive and declaratory relief under the Administrative Procedures Act ("APA") on three causes of action: (1)–(2) Violations of the Procedural Requirements of NFIA; and (2) Violations of the Substantive Requirements of NFIA. Defendant moved to dismiss. The Court granted the motion in part, dismissing the first two causes of action because "Plaintiff admit[ted] that the Court cannot review for procedural defects." (*See* Order 12:5–6, June 9, 2010, ECF No. 20). The Court refused to dismiss the third cause of action, because Plaintiff's alleged failure to timely appeal within FEMA was not a jurisdictional bar, and in any case time was equitably tolled and/or waived because Plaintiff had filed the appeal within the time limit represented to him by FEMA, and FEMA had accepted and considered the allegedly late appeal. Finally, the Court ruled that the third cause of action survived the Rule 12(b)(6) challenge. Plaintiff asks the Court to reconsider its dismissal of the first two causes of action.

## II.   LEGAL STANDARDS

A motion to alter or amend a judgment must be made within twenty-eight (28) days of entry of judgment. Fed. R. Civ. P. 59(e). Here, the Court entered the order on June 9, 2010, and Plaintiff filed the present motion thirteen days later on June 22, 2010. Therefore the motion to reconsider is timely under Rule 59(e) and will be considered under that rule as opposed to Rule 60(b). *Am. Ironworks & Erectors, Inc. v. N. Am. Contr. Corp.*, 248 F.3d 892, 898–99 (9th Cir. 2001) ("[A] 'motion for reconsideration' is treated as a motion to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) if it is filed within ten days of entry of judgment.").[1]

## III.   ANALYSIS

Plaintiff argues that the Court erred when it wrote that Plaintiff had admitted in its

---

[1] On December 1, 2009, the time to file a Rule 59(e) motion was extended to twenty-eight days. *Compare* Fed. R. Civ. P. 59(e) (2009), *with* Fed. R. Civ. P. 59(e) (2010).

opposition that FEMA's determination could only be reviewed for substantive, and not procedural, errors. Plaintiff argues that it never made such a broad concession, and that it only argued that if it had sued based solely on a lack of due process within the NFIA scheme, the Court would not be able to invalidate the FIRM, but it is in fact suing based on substantive errors, and the procedural errors "are relevant . . . because they intertwine with the substantive deficiencies . . . ." (Pl.'s Opp'n 10:2–2, Feb. 2, 2010, ECF No. 13). Plaintiff appears to be correct. Plaintiff also noted that it was prepared to bring a constitutional procedural due process claim if the Court required amendment of the Complaint. (*See id.* 10 n.4).

In their motion to dismiss, Defendants argued that NFIA's waiver to the government's sovereign immunity applies only to adjudication of the denial of flood insurance claims and base flood elevation determinations, not the procedures used to arrive at such decisions. (*See* Mot. Dismiss 6:13–18, Jan. 19, 2010, ECF No. 11). The APA itself, of course, permits judicial review based on "agency failure to abide by the procedural requirements of the APA, its own enabling act, or its own regulations," regardless of the lack of a specific grant of review in the relevant enabling statute. Alfred C. Aman, Jr. & William T. Mayton, *Administrative Law* 505 (2d ed. 2001) (footnotes omitted). Still, as Defendants correctly noted, review of agency procedures is not permitted where "agency action is committed to agency discretion by law," 5 U.S.C. § 701(a)(2), or where the relevant enabling statute "preclude[s] judicial review," § 701(a)(1). Defendants then argued that the relevant enabling statute here (NFIA) precludes judicial review. Defendants based this argument on the "limited waiver of sovereign immunity and the legislative history of the NFIA . . . ."

Defendants were incorrect. The Court did not address this argument in the original order but dismissed the first two causes of action based on its interpretation that Plaintiff had conceded the point. In their response to the present motion for reconsideration, Defendants still argue that Plaintiff has conceded the point. Upon closer inspection, Plaintiff does not appear to have

conceded the point, and even if Plaintiff had admitted that it did not believe it FEMA's procedural irregularities could be reviewed, a plaintiff's (mistaken) admission in this regard is not controlling. Subject matter jurisdiction cannot be waived, and NFIA indeed permits review of FEMA's procedures thereunder. *See Columbia Venture, LLC v. S.C. Wildlife Fed'n*, 562 F.3d 290 (4th Cir.), *cert. denied sub nom. Columbia Venture, LLC v. FEMA*, 130 S. Ct. 418 (2009). In *Columbia Venture*, the plaintiff complained of FEMA's failure to timely publish notice of proposed determinations of base flood elevations in the Federal Register in violation of a provision of NFIA, 42 U.S.C. § 4104(a), and the district court therefore vacated FEMA's determinations. *See id.* at 291–92. The Court of Appeals reversed, not based on a lack of jurisdiction, but based on lack of prejudice under the APA. *See id.* at 294–95 (citing 5 U.S.C. § 706[(2)(F)] (requiring reviewing courts to apply "the rule of prejudicial error")). Although it did not directly address the question, the *Columbia Venture* court necessarily accepted that the district court (and the Court of Appeals itself) had jurisdiction to review FEMA's actions under NFIA for procedural irregularities, because had such jurisdiction been lacking, resort to the prejudicial error rule in § 706(2)(F) would have been neither necessary nor possible.

NFIA explicitly incorporates "the scope of review" of "chapter 7 of Title 5" (the APA) for "[j]udicial review of final administrative determinations." 42 U.S.C. § 4104(g). This is precisely why the *Columbia Ventures* court applied the rule of prejudicial error in resolving the procedural challenge in that case. *See* 562 F.3d at 294. Defendants argue that NFIA only allows appeals based on the technical and scientific accuracy of base flood level determinations. *See* § 4104(b). The technical and scientific accuracy of the flood maps is exactly what Plaintiff disputes. It is aggrieved not only by the result, but also by the alleged lack of required procedure used to come to that result. This is presumably what Plaintiff means when it says its procedural grievances are "intertwined" with its substantive grievance. Defendants attempt to escape the procedural requirements of NFIA and the APA in making such substantive determinations by

interpreting NFIA to mean that no due process whatsoever is required, and that Plaintiff may only challenge the substance of the determination directly. In other words, according to Defendants, FEMA may totally ignore the procedural requirements so long as it gets the answer right, and a plaintiff may only challenge the answer directly. But both the procedural notice and comment requirements in NIFA and the incorporation of the APA's standards of review would be surplusage if Defendants' argument were correct. The *Columbia Venture* court permitted (but ultimately denied on the merits) a procedural challenge under the notice requirements of § 4104(a) because the underlying grievance, as here, concerned the technical and scientific accuracy of flood maps. *See* 562 F.3d 290, 294 ("Columbia Venture has not shown that it suffered prejudice as a result of FEMA's defective publication."). In other words, it appears that so long as the substance of the complaint concerns the technical and scientific accuracy of base flood determinations, as opposed to some other kind of grievance, then the full panoply of jurisdiction to decide procedural defects—at least under the procedural requirements of NFIA itself—in reaching such a determination applies. If procedural complaints were disallowed under NFIA altogether, the *Columbia Venture* court would simply have noted this and not addressed the procedural complaint under the rule of prejudicial error. *See id.*

The *Columbia Venture* court considered no direct APA challenge, but a challenge that the procedures of NFIA itself were not complied with. In this case, Plaintiffs bring a direct APA challenge to FEMA's procedures. A court of the District of New Jersey has ruled in an unpublished case that there is no jurisdiction under the APA to entertain procedural violations of NFIA by FEMA. *See Cnty. of Monmouth v. FEMA*, No. 09-769 (JAP), 2009 WL 3151331, at *4 (D.N.J. Sept. 24, 2009). That court reasoned that because waiver of sovereign immunity must be explicit and NFIA explicitly waived it only as to challenges to base flood elevation determinations, there was no jurisdiction to review FEMA's determinations under the APA. *See id.* But NFIA itself incorporates the "scope of review" provided in the APA for resolving

challenges based on base flood elevation determinations. *See* 42 U.S.C. § 4104(g). The APA in turn clearly permits review for procedural irregularities. Therefore, the relevant enabling statute in this case (NFIA) does not appear to "preclude judicial review" of the procedures used in reaching base flood elevations. § 701(a)(1). Again, Plaintiffs are not attempting to introduce a challenge based on a substantive issue beyond the scope of permissible review under NFIA. NFIA clearly limits judicial review to matters arising out of base flood elevation determinations. But if the substance of the grievance is a technically or scientifically erroneous base flood elevation, the scope of review of the procedure required in making such determinations appears to be that under the APA, as incorporated by NFIA, in addition to any additional procedure required by NFIA itself. *See* 42 U.S.C. § 4104(g). In other words, an "APA claim" based on alleged errors in making a base flood elevation determination *is* a NFIA claim. This might be what the Eighth Circuit meant when it affirmed dismissal of a separate APA claim in a base-flood-elevation case where "[NFIA] provide[d] an adequate legal remedy." *See Great River Alliance v. FEMA*, 615 F.3d 985, 989 (8th Cir. 2010) (citing 5 U.S.C. § 704; 42 U.S.C. § 4104(g)).

Admittedly, the construction of the APA together with NFIA is difficult and complex, because NFIA explicitly refers to and incorporates the APA in places, the APA in turn implicitly refers to enabling acts such as NFIA, and the requirements of due process are rarely easy to extract from legislative language even in the absence of such cross-references. But if Congress intended that the exclusive remedy for grievances over base flood elevation determinations would be governed by the procedural standards in NFIA, and not also by those in the APA, it seems exceedingly odd that it would explicitly provide in NFIA itself that the "scope of review" in the district court was "as provided by [the APA]." *See* § 4104(g). Where procedures required by NFIA conflict with those required by the APA, those of NFIA must control because the specific controls the general, but where the procedures required by NFIA and the APA can

1 coexist, § 4104(g) is best read as making them cumulative.

2 In moving to dismiss the procedural violation claims based on the argument that FEMA's decision was committed to its discretion by law, Defendants relied on the legislative history of NFIA. Under the APA, "[the exemption] is applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401, U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26 (1945)). "[Section] 701(a)(2) makes it clear that 'review is not to be had' in those rare circumstances where the relevant statute 'is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). The question therefore is whether NFIA is drawn so broadly that the Court has no meaningful standard against which to judge FEMA's exercise of discretion in this case.

The *Columbia Venture* court assumed that FEMA's actions under NFIA were subject to review for procedural irregularities under the APA, and the text of NFIA makes it clear that FEMA's decisions are subject to review under the APA as a general matter. 42 U.S.C. § 4104(g) ("Any appellant aggrieved by any final determination of the Director upon administrative appeal, as provided by this section, may appeal such determination to the United States district court for the district within which the community is located not more than sixty days after receipt of notice of such determination. The scope of review by the court shall be as provided by chapter 7 of Title 5."). To determine whether a review of a complaint concerning FEMA's alleged procedural errors is barred by §701(a)(2), the Court must examine the particular procedural error(s) alleged and determine whether the enabling statute (NFIA) or regulations passed pursuant to it provide a meaningful standard against which to judge FEMA's actions.

In the first cause of action, Plaintiff alleges that FEMA failed to adhere to 44 C.F.R. §§ 66.1 and 66.5. Section 66.1(c) requires:

The Federal Insurance Administrator or his delegate shall:

> (1) Specifically request that the community submit pertinent data concerning flood hazards, flooding experience, plans to avoid potential hazards, estimate of historical and prospective economic impact on the community, and such other appropriate data (particularly if such data will necessitate a modification of a base flood elevation).
>
> (2) Notify local officials of the progress of surveys, studies, investigations, and of prospective findings, along with data and methods employed in reaching such conclusions; and
>
> (3) Encourage local dissemination of surveys, studies, and investigations so that interested persons will have an opportunity to bring relevant data to the attention of the community and to the Federal Insurance Administrator.
>
> (4) Carry out the responsibilities for consultation and coordination set forth in § 66.5 of this part.

44 C.F.R. § 66.1(c)(1)–(4). There is a considerable amount of discretion here. The scope of review of FEMA's actions here is limited to determining whether some request was made for the Douglas County community to submit the data identified in subsection (c)(1), whether Douglas County officials were notified in some manner of the progress of the investigations, and whether FEMA encouraged dissemination of the investigation. Section 66.5 requires:

> (a) Contact shall be made with appropriate officials of a community in which a proposed investigation is undertaken, and with the state coordinating agency.
>
> (b) Local dissemination of the intent and nature of the investigation shall be encouraged so that interested parties will have an opportunity to bring relevant data to the attention of the community and to the Federal Insurance Administrator.
>
> (c) Submission of information from the community concerning the study shall be encouraged.
>
> (d) Appropriate officials of the community shall be fully informed of (1) The responsibilities placed on them by the Program, (2) the administrative procedures followed by the Federal Emergency Management Agency, (3) the community's role in establishing elevations, and (4) the responsibilities of the community if it participates or continues to participate in the Program.
>
> (e) Before the commencement of an initial Flood Insurance Study, the CCO or other FEMA representative, together with a representative of the organization undertaking the study, shall meet with officials of the community. The state coordinating agency shall be notified of this meeting and may attend. At this meeting, the local officials shall be informed of (1) The date when the study will commence, (2) the nature and

> purpose of the study, (3) areas involved, (4) the manner in which the study shall be undertaken, (5) the general principles to be applied, and (6) the intended use of the data obtained. The community shall be informed in writing if any of the six preceding items are or will be changed after this initial meeting and during the course of the ongoing study.
>
> (f) The community shall be informed in writing of any intended modification to the community's final flood elevation determinations or the development of new elevations in additional areas of the community as a result of a new study or restudy. Such information to the community will include the data set forth in paragraph (e) of this section. At the discretion of the Regional Administrator in each FEMA Regional Office, a meeting may be held to accomplish this requirement.

44 C.F.R. § 66.5. Subsections (a) through (d) appear to require nothing more than is already required by § 66.1. Subsection (e) requires a pre-investigation meeting between some FEMA representative and Douglas County officials regarding the redrawing of FIRMs, at which meeting certain information is discussed. Subsection (f) requires written notification of any intended modification to Douglas County's final flood elevation determinations. FEMA has discretion whether to hold a subsection (f) meeting in addition to written notification.

Plaintiff alleges three procedural violations in its first cause of action. First, it alleges violations of §§ 66.1(c)(2) and 66.5(b), because information about the upcoming investigation was not disseminated to Douglas County officials. (*See* Compl. ¶ 21). The Court may review such an allegation under the APA. There is a meaningful standard in the regulations according to which the Court can determine whether FEMA disseminated the required information. FEMA has discretion in determining the method and timing of dissemination, but the Court can review whether the type of information required to be disseminated was disseminated in some fashion. Second, Plaintiff alleges violations of §§ 66.(c)(1) and 66.5(c) because FEMA failed to solicit input from the community. (*See* Compl. ¶ 21). Again, the Court can review under the APA whether FEMA solicited input from the community in some manner. Third, Plaintiff alleges FEMA failed to hold the required pre-investigation meeting with Douglas County officials under § 66.5(e). The Court can determine whether such a meeting occurred and whether the required information was discussed. These regulations are not "drawn so that a court would have no

meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. FEMA has discretion in how it carries out these requirements, but the Court can determine objectively whether it has carried them out without disturbing the agency's discretion.

In the second cause of action, Plaintiff alleges a violation of a procedural requirement of NFIA: "Upon appeal by any community . . . [t]he Director shall resolve such appeal by consultation with officials of the local government involved, by administrative hearing, or by submission of the conflicting data to an independent scientific body or appropriate Federal agency for advice." 42 U.S.C. § 4104(e). This section of NFIA requires the Director, upon appeal, to consult with Douglas County officials, hold an administrative hearing, or to submit the conflicting data to an independent scientific body or appropriate federal agency. Plaintiff alleges that FEMA failed to resolve Plaintiff's appeal in any fashion before issuing its final determination. (*See* Compl. ¶ 25). The Court can also determine whether the minimum requirements were satisfied here.

In summary, the Court has jurisdiction to review Defendants' actions under NFIA and the APA, and it therefore reconsiders the motion to dismiss in this regard. Defendants did not file for summary judgment in the alternative, so the Court will not perform such an analysis at this time.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Reconsideration (ECF No. 25) is GRANTED.

IT IS SO ORDERED.

Dated this 16th day of March, 2011.

_____
ROBERT C. JONES
United States District Judge